IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 04-11 Erie |
| | ) | |
| ROBERT LYNN, JR. | ) | |

## POSITION WITH RESPECT TO SENTENCING FACTORS

AND NOW, comes the defendant, ROBERT LYNN, JR., by his attorney, Thomas W. Patton, Assistant Federal Public Defender, and respectfully files this Position With Respect to Sentencing Factors, and in support thereof sets forth as follows:

Mr. Lynn has previously filed a Motion for Downward Departure asking for a downward departure from his guideline imprisonment range of 12 to 18 months based upon extraordinary family circumstances. The motion was based on Mr. Lynn's work at his step-father's business and the fact that if Mr. Lynn were incarcerated the business would fail, leaving his parents bankrupt. The motion also discussed Mr. Lynn's wife's diagnosis of cervical cancer and Mr. Lynn's need to be with his wife during her treatment and recovery. Mr. Lynn's circumstances have changed since the filing of the Motion for Downward Departure, and not for the better.

Unfortunately, Mr. Lynn's step-father's business has failed, and he and Mr. Lynn's mother have filed for bankruptcy protection. Their home has just recently been sold at a sheriff's sale. Obviously, the motion for downward departure is moot to the extent it relied upon Mr. Lynn's need to be present to help save the business.

Mr. Lynn's wife, Lori, had a hysterectomy as a result of her diagnosis of cervical cancer. Unfortunately for Lori, her treating physician did not follow the surgery with radiation or chemotherapy treatment and as a result, in September of this year there was a recurrence of cervical

cancer in her rectal wall.  Additionally, there are metastatic lesions in Lori's liver.  A letter from Dr. J. Denise Moylan, one of Lori's treating physicians, is attached as Defendant's Exhibit A.  Dr. Moylan's letter details Lori's serious medical condition.  According to National Library of Medicine and the National Institutes of Health, the 5-year survival rates (the chance of still being alive 5 years after the diagnosis) for women with cervical cancer who have appropriate treatment are approximately 14% when the cancer has invaded the bladder or rectum or has spread beyond the pelvis.  Defendant's Exhibit B.

When Lori's current cancer was diagnosed in September, the original plan was to operate quickly.  However, the doctors ultimately decided that the tumor in Lori's rectum was too large to safely remove so they ordered radiation and chemotherapy treatment to shrink the tumor prior to surgery.  As Dr. Moylan notes in her letter, surgery will be required at some point.

Lori is currently undergoing radiation treatment five days a week and chemotherapy treatment one day a week.  These treatments leave her very weak, and she needs constant assistance to perform even the simplest tasks of getting out of bed, taking a shower, etc.  A letter from Lori is being sent to the Court under separate cover.  Lori explains in the letter that she has no family living near her and none of her family members are able to travel to where she is to care for her.  Mr. Lynn is the only person Lori has to help her.  Dr. Moylan's letter stresses that not only is Lori relying on Mr. Lynn, Dr. Moylan and her colleagues are relying upon Mr. Lynn to transport Lori to the various locations at which she is treated.  Mr. Lynn, according to Dr. Moylan, "is playing a vital role" in Lori's care.

As if Lori's cancer is not enough for her and Mr. Lynn to face, on October 2, 2005, their apartment caught fire and was destroyed.  Mr. Lynn and Lori lost almost everything in the fire.  A

brief newspaper article reporting the fire is attached as Defendant's Exhibit C.

Under the Supreme Court's ruling in United States v. Booker, 542 U.S. ___, 125 S.Ct. 738 (2005), the Sentencing Guidelines are advisory, and this Court's sentence is no longer driven and controlled by the rigidity of the Sentencing Guidelines.  Rather, in Booker's wake this Court must impose a sentence **"sufficient, but not greater than necessary"** to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).  18 U.S.C. § 3553(a)(1).  Section 3553(a)(2) directs the Court to consider the need for the sentence imposed:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the defendant; and

(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The Court must also consider the nature and circumstances of the offense, and the history and characteristics of the defendant, the kinds of sentences available, the sentence recommended by the sentencing guidelines, the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to victims of the offense.  18 U.S.C. § 3553(a)(1), (3), (4),(5),(6), and (7).

Even under the guidelines a downward departure for extraordinary family circumstances is called for in this case.  Section 5H1.6 of the sentencing guidelines allows for a downward departure due to extraordinary family circumstances. United States v. Gaskill, 991 F.2d 82, 86 (3rd Cir. 1993). A downward departure based upon family circumstances is appropriate when the particular circumstances involved in a case are not "ordinary" or "generally" present.  Id.  "[T]he length of

imprisonment mandated by the Guidelines and the nature of the offense are also circumstances that should be factored into the equation." Id. A defendant facing an extremely lengthy period of incarceration is not a good candidate for a family circumstances departure because even with a departure the defendant will still be facing a period of incarceration. United States v. Headley, 923 F.2d 1079, 1082-83 (3rd Cir. 1991). Mr. Lynn's sentencing range is very low, and a very modest departure can avoid a sentence of imprisonment. And, while violent offenders are not good candidates for a family circumstances departure because incarceration may be necessary to protect the public, Mr. Lynn is not a violent person and has no history of committing crimes of violence.

"Whether a particular case is appropriate for downward departure is a question of its lying 'outside the heartland,' that is, outside the ordinary. Thus, the term 'extraordinary,' . . . retains its literal meaning: the circumstances of the case must simply place it outside the ordinary. There is no requirement that the circumstances be *extra*-ordinary by any particular degree of magnitude." United States v. Dominguez, 296 F.3d 192, 195 (3rd Cir. 2002) (internal citation omitted).

The Third Circuit has emphasized the importance of departures, in appropriate cases, to the overall effectiveness of the sentencing guidelines. "It is important, . . ., to realize that departures are an important part of the sentencing process because they offer the opportunity to ameliorate, at least in some aspects, the rigidity of the Guidelines themselves. District judges, therefore, need not shrink from utilizing departures when the opportunity presents itself and when circumstances require such action to bring about a fair and reasonable sentence." Gaskill, 991 F.2d at 86.

The Second Circuit has realized that to a large extent a downward departure based upon extraordinary family circumstances is based on the sentencing court's belief that incarceration would be too harsh a blow to a defendant's family members, not on the sentencing court's belief that the

defendant's family circumstances decreases her culpability or that incarceration would be too harsh a blow to the defendant herself.  United States v. Johnson, 964 F.2d 124, 129 (2nd Cir. 1992) ("The rationale for a downward departure here is not that Johnson's family circumstances decrease her culpability, but that we are reluctant to wreak extraordinary destruction on dependents who rely solely on the defendant for their upbringing.")

Whether the Court uses its Booker discretion or a downward departure under the guidelines, a sentence of probation is necessary.  Incarcerating a defendant always has a profound negative impact on their family.  However, even the guidelines recognize that when the negative impact is extraordinary, a downward departure is appropriate to avoid catastrophic results.  Lori and her doctors need Mr. Lynn to be there to help Lori through this terribly trying ordeal.  Mr. Lynn is not a violent offender and for the past eighteen months he has been released on bond and has complied with all of his bond conditions.  This shows a sincere effort on Mr. Lynn's part to make a break from his past history of crime and live a law abiding life so that he can help his wife.

A very modest departure, either Booker or traditional, can avoid a term of imprisonment. Mr. Lynn's wife has no chance of survival without his help.  If ever there were a case calling for a lower sentence due to extraordinary family circumstances, this is it.

WHEREFORE, the defendant, Robert Lynn, Jr., respectfully requests that this Court sentence him to a term of probation so that he may assist his wife obtain the medical treatment she needs.

Respectfully submitted,

/s/ Thomas W. Patton
Thomas W. Patton
Assistant Federal Public Defender
Pa I.D. No. 88653

5